THE UNITED STATES, APPELLANTS, *v.* THE HEIRS OF JOSEPH DELESPINE AND OTHERS, APPELLEES.

A claim for a square of four miles of land, under a grant from Don Jose Coppinger, Spanish Governor of East Florida, situated at the north head of Indian river, confirmed.

The certificate of Don Tomas de Aguilar, Secretary of the Government and Province, of the copy of the grant of the Governor, stating the same "to be faithfully drawn from the original in the Secretary's office under his charge;" was legal evidence of the grant; and was properly admitted as such, in support of the same. The case of The United States *v.* Wiggins, 14 Peters, and The United States *v.* Rodman, at this term, deciding the same point, cited. The case of The United States *v.* Percheman, 7 Peters, 96, cited.

A grant of ten thousand two hundred and forty acres of land, by the Spanish Governor of Florida, which recited, among other things, that it was made under a royal order of the King of Spain, of 29th March, 1815, and which was not in conformity with the grant; but which was made in the exercise of other powers to grant lands, which had been vested in the Governor; was not made invalid by the recital of the royal order as the authority for the grant. The grant recited also, that it was made in consideration of military services, and was also in consideration of the surrender of another grant, previously made, which surrender had been accepted by the Governor. These were sufficient inducements to the grant.

APPEAL from the Superior Court of East Florida.

Joseph Delespine and others presented a petition to the Superior Court of East Florida, claiming ten thousand two hundred and forty acres of land, at the north head of Indian river, by virtue of a concession from Governor Coppinger, the Spanish Governor of East Florida, to Pablo Fontane, dated November 10, 1817.

The grant, and circumstances of the case, are full stated in the opinion of the Court.

The Superior Court of East Florida decreed a confirmation of the grant; and the United States prosecuted this appeal.

The case was argued by Mr. Gilpin, for the United States; Mr. Downing appeared as counsel for the appellees.

Mr. Gilpin, for the United States, relied on the following grounds :—

1. That the evidence in the case is insufficient to prove that the alleged grant or concession was ever made.

2. That if it be proved or admitted that the alleged grant or concession was ever made, still, that the same was not in conformity to the royal order of 29th March, 1815, by virtue of which, it is declared that the concession was made.

1. This is an alleged concession of Governor Coppinger. The evidence to support it is a copy of the concession, certified by Tomas de Aguilar, and it is accompanied by an order and certificate of survey. The only point to be considered in regard to this evidence is, whether or not the facts bring the case within the rule established in that of The United States *v.* Wiggins, 14 Peters, 348. This Court certainly will not extend the scope of that rule, so as to give any weight to these secondary evidences of title which it does not indisputably recognise. It is not denied that the production of the order of survey, and the plat and certificate made in pursuance thereof, go far to bring it within that decision; but it may not be improper to ask the particular consideration of the Court to the depositions annexed to the record, which would seem to show that the existence of the original concession was a matter of doubt at a very early period; that in March, 1822, very shortly after the cession of Florida, before the alleged losses of papers are supposed to have occurred, and when the grantee was yet living, and sold part of his interest to Delespine, it appears not to have been in existence; and that the particular fact of its actual existence, at any time, is not proved by a single witness.

2. This grant purports to be founded on the royal order of 29th of March, 1815, 2 White's New Rec. 279. That order authorizes the Governor to grant land to the soldiers in the militia; the quantity being the same " as established by regulation in the province, agreeably to the number of persons composing each family;" and it also contemplates special rewards to certain officers mentioned in it. If Fontane, the grantee, was, as it is presumed he was, one of the militia authorized to take under this order, yet he was entitled only to the quantity " established by regulation," which was much less than that included

**SUPREME COURT.**

in the alleged concession. It may then be said, in the language of this Court, in the case of The United States *v.* Clarke, 8 Peters, 448, that "If the validity of the grant depends on its being in conformity with the royal order, it cannot be supported." It is true, that this Court, in the case of The United States *v.* Percheman, 7 Peters, 96, in examining the effect of a recital of the royal order of 29th March, 1815, in a grant of a large body of land, declared "that the reference to it was to be regarded no farther than as showing that the favourable attention of the king had been directed to the petitioner." If the facts of the present case are similar to those which led the Court in that case, so to regard the effect of the royal order, it is admitted that the grant, if made, was valid. But are they similar? In the first place, Percheman was a distinguished officer of dragoons, who had rendered important military services; and this Court said, that the Governor made the grant, as a reward for these services, which he had full authority to do under the laws of the Indies. But, in the second place, it happened that Percheman was himself one of the officers individually mentioned in the royal order of 1815, as entitled to a special reward; and, therefore, the order was naturally and properly recited in the grant. These considerations evidently made a large grant, in that case, perfectly consistent with a reference to the royal order of 1815. But neither of them is applicable to the present case. Neither the petition nor the grant refers directly or indirectly to any military services; nor was the grantee, Fontane, one of those specially named in it. How, then, can such a grant, solicited and made, as this purports to be, "in virtue of the said royal order," be valid?

3. The grant is for a tract of land "on a creek which, issuing from the north head of Indian river, westwardly, runs to the northwest." The certificate of the survey is for a tract "in the territory of Musquito, northwestwardly of Indian river." The petition of the claimant is for a tract "at the north head of the river Ys, or Indian river, on the west side thereof." This discrepancy is fatal to the validity of the claimant's title. The land surveyed and claimed is not identical with that granted; the title to the latter has never been perfected, even by a survey: it is too late for this now to be done: and, therefore, the decree of the Superior Court of East Florida, made pursuant to the de-

[The United States *v.* Delespine et al.]

scription in the grant, cannot cure the defect resulting from the negligence of the claimant himself. It falls within the principles which have already been before the Court at this term, in the case of The United States *v.* The Heirs of Forbes.

Mr. Justice WAYNE delivered the opinion of the Court.

Appeal from the Superior Court of East Florida.

The decree of the Court declares the claim to be valid, to a square of four miles of land on a creek, issuing from the north head of Indian river, westwardly, and running to the north-west.

The following is the memorial and grant offered by the appellees, to maintain the claim:

HIS EXCELLENCY THE GOVERNOR.

Don Pablo Fontane, an inhabitant and merchant of this place, with due respect represents to your Excellency, that in consequence of the orders of His Majesty of the twenty-ninth of March, one thousand eight hundred and fifteen, in which he has been pleased to grant, gratuitously, to his faithful subjects of this Province, lands in proportion to the services rendered by them, and as your petitioner considers himself included in the said royal favour, this government granted to him, under date of the twenty-fifth of June, of the present year, in absolute property, as it appears by the document duly annexed, a quantity of land comprehended in a square of four miles, on Trout creek, of the river St. John, and as it happened that when he went to take possession of the said land, he found it in the possession of Dona Beig Bagely, widow, and this he represents to your Excellency, in order that you be pleased to withdraw the said document of ownership which is annexed, and to grant him another in lieu thereof, for the same quantity of land on another creek, which, issuing from the north head of Indian river westwardly, runs to the north-west. Therefore, your petitioner supplicates your Excellency to consider as returned the mentioned document of concession, and, in virtue of the said royal order, to grant him, in absolute property, the square of four miles of land, at the place which he has just designated, as the same is vacant, which favour he hopes to receive from the justice of your Excellency. St.

Augustine of Florida, tenth of November, one thousand eight hundred and seventeen.          PABLO FONTANE.

St. Augustine, tenth of November, one thousand eight hundred and seventeen: I accept the retrocession which this party offers, of the land which was granted to him on the twenty-sixth of June last past, for the reasons which he exhibits in this petition, and in lieu thereof, I grant him in lawful property, in conformity to the royal order to which he refers, and as he is entitled thereto, the square of four miles of land on the north head of Indian river, which he designates, and to this effect let the Secretary's office issue to him a copy conforming to this decree, to which will be annexed the copy of this petition, on which the decree was rendered.    In testimony thereof, and in order that at all times it may serve as a title in form to the interested party.

COPPINGER.

### CERTIFICATES OF AGUILAR.

I, Don Tomas de Aguilar, sub-lieutenant of the army and secretary of the government of this place, and of the Province thereof, for his majesty, do certify that the preceding copy is faithfully drawn from the original, which exists in the Secretary's office in my charge, and in obedience to order, I give the present in St. Augustine of Florida, on the eleventh of November, one thousand eight hundred and seventeen.

TOMAS DE AGUILAR.

We, Don Francisco Fatio, and Don Juan Huertas, members of this illustrious council constitutional, do certify, that the signatures affixed in this expedient, are the same which the signers use, and in testimony thereof, we sign this in St. Augustine, on the thirteenth of June, one thousand eight hundred and twenty-one.          FRANCISCO J. FATIO,
                    JUAN HUERTAS.

*St. Augustine, 16th May,* 1832.—I certify that the preceding is a correct translation of the Spanish document annexed.

A. GAY *Translator and Interpreter
f the Sup'r Court.*

It is contended that the decree should be reversed, because the evidence is insufficient to prove that the grant was made. The proof is a certificate of Aguilar, the secretary of the government, which has been ruled to be sufficient in the case of The United States *v.* Wiggins, 14 Peters; and again, at this term, in the case of The United States *v.* Rodman.

The second objection is, that if the grant is proved, it is not in conformity to the royal order of the 29th March, 1815, by virtue of which it is declared the grant was made.

That royal order has been under the consideration of this Court in Percheman's case, 7 Peters, 96. In that case, it will be seen that the petitioner refers in his memorial to the order of the 29th March, 1815; and that the Governor in the grant for the land says: "In consideration of the provisions of the royal order, under date of 29th March last, which is referred to, I do grant to him in absolute property," &c.; but the Court (referring to certificates which were annexed to the memorial for the grant, which the grant refers to as certificates annexed) said, "military service is the foundation of the grant, and the royal order is referred to only as showing that the favourable attention of the king had been directed to the petitioner." 7 Peters, 96. The Court sustained the grant in that case; notwithstanding it was said to have been made in consideration of the royal order of 1815, which limits grants to one hundred acres, and to persons of a particular regiment. The power in the Governor to make a larger grant of land, was not thought to be restrained in making a grant to one, who was not of the regiment designated in the order, and who applied for it on the ground of services. The reasoning in that decision cannot be shaken. It applies with full force to the grant now under consideration; the decree of the Governor being alike in both cases. But this has an additional consideration, recited in the memorial. The surrender of another grant previously made for services; recognised by the Governor in his acceptance of the retrocession offered by the memorialist. This is a grant in absolute property. Though it recites the order of the 29th March, 1815, the inducements for making it are considerations, which plainly show it was not intended by the Governor to be restrained to the number of acres limited by that order.

[The United States v. Delespine et al.]

The judgment of the Court below will be affirmed; but as the survey given in evidence in this case was rejected by the Court, as it should have been, this Court will direct a survey to be made at the place designated in the decree of the Court below, for the number of acres decreed, without prejudice to the rights of third parties.

This cause came on to be heard on the transcript of the record from the Superior Court for the District of East Florida, and was argued by counsel. On consideration whereof, it is adjudged and decreed by this Court, that the decree of the said Superior Court in this cause, so far as it declares the claim of the petitioners to be valid, be, and the same is hereby, affirmed in all respects; and that a survey be made of the lands contained in the said concession, according to the terms thereof, for the number of acres, and at the place therein designated; provided, it does not interfere with the rights of third parties: and it is further ordered by the Court, that a mandate be issued to the Surveyor of Public Lands, directing him to do, and cause to be done, all the acts and things enjoined on him by law, and as required by the decree and opinion of this Court in this case; and that this case be remanded to the said Superior Court for further proceedings to be had therein, in conformity to this decree, and the opinion of this Court, which must be annexed to the mandate